UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TONY HURD,

                    Plaintiff,                    Case No. 2:24-cv-129

v.                                               Honorable Paul L. Maloney

KRIS TASKILA et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the
Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is
required to dismiss any prisoner action brought under federal law if the complaint is frivolous,
malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a
defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The
Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520
(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly
incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will
dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)
at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which
he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga

County, Michigan. Plaintiff sues Warden Kris Taskila, Corrections Officers Unknown Capello and Unknown Turunen, and Prison Counselor Larry Gibson.

Plaintiff alleges that on July 8, 2021, he arrived at AMF and was placed in Unit 2 Segregation. (ECF No. 1, PageID.9.) Plaintiff states that he was deprived of his toothpaste and deodorant pursuant to Defendant Taskila's interpretation of segregation policy from July 9, 2021, through November 13, 2023.[1] (*Id.*, PageID.9–16.)

Plaintiff was told to talk to Defendant Gibson and non-party Resident Unit Manager Miller about the issue. (*Id.*, PageID.9.) Plaintiff then purchased "Segregation Standards" Policy Directive 04.05.120. (*Id.*) Plaintiff asked Defendant Gibson why he was not allowed his deodorant and toothpaste and Defendant Gibson stated that they were on the "Non-Allowables Attachment." (*Id.*) Plaintiff states that Resident Unit Manager Miller told him that it was a non-grievable issue. (*Id.*, PageID.10.) Plaintiff responded that neither deodorant nor toothpaste were on the list of items not allowed in segregation and showed Defendant Miller a copy of the pertinent attachment. (*Id.*; ECF No. 1-2, PageID.36.) Defendant Gibson and Resident Unit Manager Miller told Plaintiff to kite Defendant Taskila because he was the only person who could approve the items. (*Id.*) Plaintiff sent a kite to Defendant Taskila on August 2, 2021, but did not receive a response. (*Id.*) On August 3, 2021, Plaintiff spoke to non-parties Deputy Warden Hoffman and Resident Unit Manager Miller, who again told Plaintiff that it was a non-grievable issue. (*Id.*)

---

[1] Plaintiff's allegations indicate that he continued to be deprived of his deodorant and toothpaste through the day he filed his complaint. (Compl., ECF No. 1, PageID.15, ¶ 64.) Upon careful review of Plaintiff's seemingly inconsistent representations, the Court concludes that Plaintiff was deprived of the personal deodorant and toothpaste that was in his property when he arrived at AMF from July 8, 2021, through July 26, 2024. As Plaintiff notes, those items are "still in his property in the property room." (*Id.*) For some shorter period of time—the period of time he remained in segregation—he was not only deprived of the toothpaste and deodorant in the property room, he was also restricted to using "Freshmint Toothpaste" and "Crawford Deodorant." (*Id.*, PageID.11–12.)

On August 26, 2021, Plaintiff sent a "declaration of truth" to Defendant Taskila asserting that deodorant and toothpaste were not on the list of items that were not allowed in segregation and that the "Crawford deodorant" and "Freshmint Tootpaste" available from the store were inadequate. (*Id.*, PageID.11.) Plaintiff states that the policy does not prohibit him from having deodorant and toothpaste from his personal property and asserts that the store deodorant burned, caused bumps, and did not work. (*Id.*; ECF No. 1-2.) Plaintiff further states that the Freshmint toothpaste caused soreness in his gums after repeated use. (*Id.*, PageID.12.)

Plaintiff alleges that he was told by other prisoners that Defendant Taskila's reason for depriving segregation prisoners of deodorant was to prevent contraband from being stored in the containers. (*Id.*, PageID.11–12.) In addition, Plaintiff alleges that he was told that Defendant Taskila prohibited toothpaste to segregation prisoners to prevent the containers from being used to throw urine or feces on officers. (*Id.*, PageID.12.) On September 1, 2021, Plaintiff began to organize prisoners to file a formal complaint and sign a petition regarding the prohibition. (*Id.*)

On October 3, 2021, Plaintiff sent Defendant Taskila a kite asking for deodorant and toothpaste but received no response. (*Id.*) On October 31, 2021, Plaintiff sent Defendant Taskila a formal complaint and petition signed by a number of prisoners. (*Id.*; ECF No. 1-5.) Plaintiff claims that Defendant Taskila was required to investigate the complaint. (ECF No. 1, PageID.12–13.) Plaintiff states that he sent the formal complaint and signed petition to the director of the MDOC, the Legislative Office of Ombudsman, the Michigan Department of Civil Rights, and the Detroit Free Press and Detroit News on November 10, 2021, and that he sent Defendant Taskila additional "declarations of truth" on November 16, 2021. (*Id.*, PageID.13.) Plaintiff alleges that, on December 16, 2021, he spoke to Defendant Taskila, who told Plaintiff that the situation was being investigated and that changes would be made. (*Id.*) Plaintiff was never interviewed. (*Id.*)

On January 10, 2022, Plaintiff continued to send complaints to Defendant Taskila but received no response. (*Id.*, PageID.14.) Plaintiff continued to be deprived of the toothpaste and deodorant he would normally use. (*Id.*) Plaintiff continued to send kites and complaints to Defendant Taskila, as well as to other agencies. (*Id.*, PageID.15.) On February 26, 2022, Plaintiff filed a grievance on Defendant Taskila claiming that he had been deliberately indifferent to his complaints. (*Id.*) Plaintiff contends that his deodorant and toothpaste are still in his property in the property room. (*Id.*)

On March 14, 2024, Plaintiff filed a grievance regarding the denial of access to his personal toothpaste and deodorant while in segregation. (*Id.*) Respondent non-party Nurkala quoted the prisoner property Policy Directive and denied the grievance. (*Id.*, PageID.15–16; ECF No. 1-20, PageID.75.) The response to Plaintiff's step II appeal of this grievance states:

> The interviewer finds no violations of PD 03.02.130 *Prisoner Parolee Grievances* or PD 04.07.112 *Prisoner Personal Property*. The step I response stated that the grievant received all of his allowable property for administrative segregation. The grievant's Prisoner Personal Property Receipts (CSJ-241) in question was reviewed. However, the documentation does reflect that toothpaste was packed in the grievant's not allowed in segregation (NAIS) property. Toothpaste is allowed in segregation but the type of toothpaste the grievant had, because of the container it came in, is not allowed in segregation. A review of the grievant's account indicates he has been on indigent [status] and has received funds from the outside. It is the grievant's responsibility to order hygiene products from the store. In the absence of any additional information in your appeal to support your grievance claim, nothing further is required in response.

(ECF No. 1-20, PageID.76.)

Plaintiff attaches a copy of the "Store Order Form: Segregation Male IISP" to his complaint. (ECF No. 1-19.) According to the form, the following choices were available to segregation prisoner for deodorant: Power Up Antiperspirant Deodorant Bloom, Lady Speed Stick Antiperspirant Deodorant Powder Fresh Invisible Dry, Lady Speed Stick A/P Invisible Dry

4

Shower Fresh, and Crawford Regular Stick Deodorant. (*Id.*) The store order form also lists Freshmint Floride Toothpaste as a choice for segregation prisoners. (*Id.*)

Plaintiff claims that on November 16, 2021, Defendant Capello said, "You got all them guys signing your complaint how did it turn out for you?" (ECF No. 1, PageID.16; ECF No. 1-23.) Plaintiff asked why Defendant Capello was worried about it since it had nothing to do with him. (*Id.*) On December 26, 2021, Plaintiff gave Defendant Capello six envelopes for outgoing mail. One to Defendant Taskila, which was sealed, and unsealed mail to MDOC Director Heidi Washington, MDOC Deputy Director Bush, the Legislative Office of Ombudsman, the Michigan Department of Civil Rights, and to the Detroit News and Detroit Free Press. (ECF No. 1, PageID.17.)

On January 3, 2022, Plaintiff observed Defendant Capello stop Defendant Turunen and talk to him for ten to fifteen seconds. (*Id.*; ECF No. 1-24, PageID.85.) Later that day, Defendant Turunen wrote a major misconduct on Plaintiff for threatening behavior based on a kite which had been taken from an envelope that Plaintiff had given to Defendant Capello for sending out. (*Id.*) The kite at issue, which Plaintiff attaches as an exhibit, is addressed to Defendant Taskila and lists the following requests: "1) That [Plaintiff] be rodeout [sic] before [Plaintiff] hurt one of your [Corrections Officers]?; 2) Can you put [Plaintiff] on the ride out list to I-Max?; 3) Can you keep [Corrections Officers] Sirvio, Collins, Butcher away from [Plaintiff] for [Plaintiff's] safety and theirs?" (ECF No. 1-11, PageID.59.) In the kite, Plaintiff also states, "I am tired of these lying misconducts and C/O's someone will get hurt I promise you!" (*Id.*)

Plaintiff attaches a copy of the misconduct written by Defendant Turunen, which states:

> When monitoring [an] envelope addressed to Warden Taskila from [Plaintiff] I discovered a hand written letter containing threats to staff stating, "Can you keep C/O Servio, Collins, Butcher Away From Me For My Safety And Their[s]? I am

> tired of this Lying Misconduct and C/Os someone will get hurt I promise you!" A
> copy of the Letter will be attached to Misconduct.

(ECF No. 1-30.)

On January 4, 2022, Plaintiff received five stamped envelopes which he had given to

Defendant Capello for mailing on December 26, 2021, with a post-it note attached, stating "These

came in the unit mailbag they were <u>all</u> empty." (ECF No. 1, PageID.17; ECF No. 1-26.) On January

4, 2022, sent Defendant Taskila a "Declaration of Truth" regarding Defendant Capello's actions

as well as for the denial of basic hygiene necessities. (ECF No. 1, PageID.17.) Plaintiff filed

grievances against Defendants Turunen and Capello on January 3 and 4 of 2022. (*Id.*, PageID.18.)

In response to Plaintiff's grievance on Defendant Turunen, non-party Sergeant Dugan stated:

> I interviewed Officer Turunen and he stated at no time has he read outgoing mail
> given to him from prisoner Hurd. All outgoing mail given to Officer Turunen was
> put directly into the housing unit mailbox. The letter that Officer Turunen read was
> an open "kite" sitting on a desk. Officer Turunen wrote [Plaintiff] a Class I
> Threatening behavior (see attached) and was found guilty through the hearing
> process.

(ECF No. 1-31, PageID.106.) Respondent Dugan found no evidence to substantiate a violation of

policy and denied Plaintiff's grievance. (*Id.*) In addition, the response to Plaintiff's step II appeal

stated that the kite containing Plaintiff's threatening comments was unsealed. (*Id.*, PageID.107.)

Plaintiff states that his grievance on Defendant Capello was not processed. (ECF No. 1,

PageID.18.) Plaintiff sent a kite to the grievance coordinator seeking an explanation on why his

grievance was not processed but received no reply. (*Id.*) Plaintiff refiled his grievance on

Defendant Capello for retaliation and mail tampering on January 13, 2022, but it was intentionally

mislabeled. (*Id.*)

Plaintiff claims that mail that is clearly identified as being sent to the business address of

the state or federal courts; federal, state, or local public officials; the Director or any other Central

Office staff; staff at the institution in which the prisoner is housed; representatives of the news

media; or the Office of the Legislative Ombudsman may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing. (*Id.*, PageID.19.) Therefore, Defendant Capello violated Plaintiff's rights when he opened Plaintiff's outgoing mail and interfered with Plaintiff's ability to seek redress of his grievances. (*Id.*) Plaintiff states that Defendant Taskila knew about this violation and failed to investigate it. (*Id.*, PageID.20.) Plaintiff claims that since arriving at AMF, he has sent over seventy affidavits, declarations of truth, kites, and formal complaints regarding Defendant Capello's conduct, and that all of Plaintiff's complaints have been ignored. (*Id.*)

On January 18, 2022, Plaintiff gave Defendant Gibson a legal photocopy disbursement with two exhibits for copying: a hearing packet related to the threatening behavior misconduct written by Defendant Turunen, and a copy of Policy Directive 04.04.113. (*Id.*, PageID.21.) Plaintiff received legal photocopy disbursement authorization for the cost of the copies from prisoner accounting, but did not receive his copies. When Plaintiff asked Defendant Gibson about the copies, Defendant Gibson stated, "You don't got no copies" and laughed at Plaintiff. (*Id.*, PageID.22.) Plaintiff asked for his copies a second time on January 20, 2022, and Defendant Gibson again stated that Plaintiff would not be receiving any copies. (*Id.*) Plaintiff kited Defendant Gibson regarding the copies but did not receive a response. (*Id.*) On January 24, 2022, Plaintiff kited non-party Resident Unit Manager Miller regarding the copies he had been charged for, but never received the copies. (*Id.*)

Plaintiff subsequently sent two kites to non-party Librarian Kemp seeking to discover where his photocopies had been sent. (*Id.*, PageID.22–23; ECF No. 1-34.) Defendant Kemp responded that the copies had been made on January 19, 2022, and sent to the Unit 2 Prisoner Counselor, who Plaintiff states was Defendant Gibson. (*Id.*) Defendant Kemp responded to the

second kite by stating that if he had not received his copies, he could resubmit the documents and she would make new copies. (*Id.*)

Plaintiff filed a grievance on Defendant Gibson on January 21, 2022, claiming that Defendant Gibson had destroyed Plaintiff's photocopies because they were evidence that Defendant Capello had retaliated against him. (ECF No. 1, PageID.23.)

Plaintiff asserts that Defendant Taskila violated his rights under the Eighth Amendment, that Defendants Capello, Turunen, and Gibson retaliated against him and that all Defendants conspired to violate his rights. Plaintiff seeks damages and equitable relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Eighth Amendment

Plaintiff asserts that Defendant Taskila violated his rights under the Eighth Amendment when Taskila's interpretation of policy denied him deodorant and toothpaste. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff claims that he was deprived of his previously purchased deodorant and was only able to buy limited choices of deodorant from the prison store. However, deodorant is not included among the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *James v. O'Sullivan*, 62 Fed. Appx. 636, 639 (7th Cir. 2003) (holding that the denial of a comb, deodorant and cleaning supplies cannot be said to have jeopardized a prisoner's health); *Johnson v. Mackie*, No. 1:17-cv-200, 2017 WL 1190553, at *3 (W.D. Mich. Mar. 31, 2017) (holding that the prisoner's Eighth Amendment claim for the denial of deodorant was frivolous); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *5 (W.D. Mich. July 19, 2010) (same); *Mitchell v. Kalamazoo Cnty. Sheriff's Dept.*, No. 1:14-cv-824, 2014 WL 7330974 at *6 (W.D. Mich. Dec. 19, 2014) ("The jail's failure to provide additional free items, such as deodorant, body lotion, wash cloths, underwear and socks does not constitute the denial of the 'minimal civilized measure of life's necessities.'"). Therefore, the Court concludes that the denial of Plaintiff's preferred brand of deodorant does not violate the Eighth Amendment.

Plaintiff also asserts that he was only able to purchase one brand of toothpaste and that his gums were sore after prolonged use of this brand. The Sixth Circuit has recognized that the complete denial of a toothbrush or toothpaste for an extended period may constitute an objectively serious deprivation of basic hygiene needs. *See Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). However, a short-term denial of a toothbrush or toothpaste falls short of constituting such a deprivation. *See, e.g., Matthews v. Murphy,* No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene

11

items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (denial of toothbrush and toothpaste for 34 days constitutes a mere temporary inconvenience); *Robertson v. McCray,* No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment); *Fernandez v. Armstrong,* No. 3:02CV2252CFD, 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (the denial of toothpaste, toothbrush, shampoo and soap for 16 days did not rise to the level of an Eighth Amendment violation where plaintiff did not allege any physical effects or injuries); *Holder v. Merline,* No. Civ. A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted).

Here, unlike in *Flanory*, Plaintiff does not allege a complete denial of toothpaste. Instead, Plaintiff claims that he was unable to use the toothpaste which was in his disallowed property, but was required to purchase toothpaste from the prison store. Moreover, the attachments to Plaintiff's complaint show that he was on indigent status and had received funds from the outside, so he was able to purchase indigent supplies from the store. (ECF No. 1-20, PageID.76.)

Plaintiff states that he did not like the brand of toothpaste available in the prison store and that with prolonged use, his gums became sore. However, Plaintiff fails to allege that he suffered any deterioration to his dental health as a result of having to use the Freshmint toothpaste available from the prison store. *See Flanory*, 604 F.3d at 254 (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan,* 62 F. App'x 636, 639 (7th Cir. 2003) (recognizing that a 49-day

deprivation of soap, toothbrush and toothpaste may impair basic levels of sanitation and hygiene only if prisoner health and safety is jeopardized); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay). Under these authorities, Plaintiff's claim concerning the denial of his preferred brand of toothpaste without any showing of consequent harm to his dental health fails to meet the objective component of the Eighth Amendment.

Plaintiff also claims that Defendant was deliberately indifferent to the retaliatory conduct of his subordinates in violation of the Eighth Amendment. However, to the extent that Plaintiff claims that Defendant Taskila failed to adequately supervise his subordinates or respond to Plaintiff's grievances, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

**B.      Interference with outgoing mail**

Plaintiff claims that on one occasion, Defendant Capello interfered with his outgoing mail to Defendant Taskila, which was sealed, and unsealed mail to MDOC Director Heidi Washington, MDOC Deputy Director Bush, the Legislative Office of Ombudsman, the Michigan Department of Civil Rights, and to the Detroit News and Detroit Free Press. (ECF No. 1, PageID.17.) Generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson,* No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife. Such a random and isolated incident is insufficient to establish a constitutional violation."). Plaintiff's inability to send complaints to Defendant Taskila, which was sealed, and unsealed mail to MDOC Director Heidi Washington, MDOC Deputy Director Bush, the Legislative Office of Ombudsman, the Michigan Department of Civil Rights, and to the Detroit News and Detroit Free Press on one occasion appears to have been an isolated occurrence.

Nor does Plaintiff allege that the asserted interference with his mail by Defendant Capello prevented him from filing a nonfrivolous legal action or cause prejudice to such an action. In order to state a claim for the denial of access to the courts, a prisoner must demonstrate actual injury to pending or contemplated litigation. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th

Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Therefore, Plaintiff's allegations against Defendant Capello regarding his outgoing mail are not sufficient to state a First Amendment claim.

### C.    Retaliation

Plaintiff alleges that Defendants Capello, Turunen, and Gibson retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Defendant Capello

Plaintiff states that Defendant Capello opened, read, and destroyed Plaintiff's outgoing mail in retaliation for Plaintiff filing grievances and complaints. Plaintiff states that on November 16, 2021, Defendant Capello said, "You got all them guys signing your complaint how did it turn out for you?" (ECF No. 1, PageID.16; ECF No. 1-23.) Plaintiff later saw Defendant Capello talking with Defendant Turunen, who then wrote Plaintiff a major misconduct for threatening behavior based on the contents of Plaintiff's sealed letter to Defendant Taskila. (ECF No. 1, PageID.17; PageID.85.) On January 4, 2022, Plaintiff received five stamped envelopes which he had given to Defendant Capello for mailing on December 26, 2021, with a post-it note attached, stating "These came in the unit mailbag they were <u>all</u> empty." (ECF No. 1, PageID.17; ECF No. 1-26.)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3. In this case, Plaintiff's complaints concerned the denial of access to specific brands of deodorant and toothpaste to segregation prisoners. As noted above, Plaintiff's complaint and petition objected to the fact that he was not able to possess and use his preferred brands of hygiene products while in segregation because of the risk that the containers could be used to throw urine or feces on officers. (ECF No. 1, PageID.12.) As noted above, Plaintiff does not have a right to possess and use a specific brand of hygiene product. Therefore, the Court concludes that Plaintiff's kite/grievance asserting such a claim was frivolous.

Moreover, the Court notes that Plaintiff's claim that Defendant Capello engaged in the adverse conduct asserted by Plaintiff is speculative and conclusory. Although Plaintiff baldly asserts that Defendant Capello opened and destroyed his mail, he fails to allege specific facts demonstrating that Defendant Capello actually engaged in that conduct. Plaintiff concedes that all of the letters/kites were submitted unsealed, except for the correspondence to Defendant Taskila.

16

Plaintiff relies on the fact that he later received the stamped envelopes with a post-it note from an unknown person stating the envelopes had arrived in the mailroom empty. Nor does Plaintiff allege facts showing that Defendant Capello was responsible for Plaintiff's misconduct ticket. The mere assertion that Defendant Capello spoke to Defendant Turunen prior to Defendant Turunen writing the misconduct is insufficient to show that the conversation with Defendant Capello prompted the incident. As noted above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### 2.     Defendant Turunen

Plaintiff claims that Defendant Turunen retaliated against him by "conspiring" with Defendant Capello to retaliate against Plaintiff for filing grievances and complaints. (ECF No. 1, PageID.25.) Plaintiff states that after he observed Defendant Capello and Defendant Turunen briefly speaking with one another, Defendant Turunen wrote a misconduct ticket on him for threatening behavior based on the contents of a kite that Plaintiff had written to Defendant Taskila. In that kite, Plaintiff requests: 1) That [Plaintiff] be rodeout before [Plaintiff] hurt one of your [Corrections Officers]?; 2) Can you put [Plaintiff] on the ride out list to I-Max?; and 3) Can you keep [Corrections Officers] Sirvio, Collins, Butcher away from [Plaintiff] for [Plaintiff's] safety and theirs? (ECF No. 1-11, PageID.59.) Plaintiff also attaches a copy of the misconduct written by Defendant Turunen, which states:

> When monitoring [an] envelope addressed to Warden Taskila from [Plaintiff] I discovered a hand written letter containing threats to staff stating, "Can you keep C/O Servio, Collins, Butcher Away From Me For My Safety And Their? I am tired of this Lying Misconducts and C/Os someone will get hurt I promise you!" A copy of the Letter will be attached to Misconduct.

(ECF No. 1-30.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation on the part of Defendant Turunen. Plaintiff alleges no facts from which to reasonably infer that Defendant Turunen's actions were motivated by protected conduct. Plaintiff does not deny making the threatening comments in the kite or otherwise assert that the misconduct ticket was based on false information. Plaintiff's attachment of the pertinent kite proves the truth of the contents of the misconduct written by Defendant Turunen. Plaintiff does not assert that he did not engage in the conduct for which he was charged in the ticket. Therefore, Plaintiff's claim that the ticket was retaliatory is barred. *See Taylor v. Ross*, No. 2:17-CV-85, 2019 WL 2256822, at *2 (W.D. Mich. Jan. 23, 2019), *report and recommendation adopted sub nom. Taylor v. Woods*, No. 2:17-CV-85, 2019 WL 1146690 (W.D. Mich. Mar. 13, 2019) ("Plaintiff was not engaged in protected conduct with respect to the two

misconducts that he admitted to violating the prison rules"). Accordingly, Plaintiff fails to state a retaliation claim against Defendant Turunen.

### 3.    Defendant Gibson

Plaintiff claims that Defendant Gibson retaliated against him when he refused to provide Plaintiff with legal copies. Plaintiff alleges that on January 18, 2022, he gave Defendant Gibson a legal photocopy disbursement for copying which included a hearing packet related to the threatening behavior misconduct written by Defendant Turunen, and a copy of Policy Directive 04.04.113. (ECF No. 1, PageID.21.) Plaintiff received legal photocopy disbursement authorization for the cost of the copies from prisoner accounting, but did not receive his copies. When Plaintiff asked Defendant Gibson about the copies, Defendant Gibson stated, "You don't got no copies" and laughed at Plaintiff. (*Id.*, PageID.22.) Plaintiff asked for his copies a second time on January 20, 2022, and Defendant Gibson again stated that Plaintiff would not be receiving any copies. (*Id.*) Plaintiff kited Defendant Gibson regarding the copies but did not receive a response. (*Id.*) Plaintiff then kited non-party Resident Unit Manager Miller and non-party Librarian Kemp. Librarian Kemp responded that the requested copies had been made on January 19, 2022, and sent to the Unit 2 Prisoner Counselor, who Plaintiff states was Defendant Gibson, but that she would make Plaintiff new copies if he resubmitted the documents. (*Id.*, PageID.22–23; ECF No. 1-34.)

As with Defendant Turunen, Plaintiff merely alleges the ultimate fact of retaliation on the part of Defendant Gibson. Plaintiff alleges no facts from which to reasonably infer that Defendant Turunen's actions were motivated by protected conduct. Although Defendant Gibson's failure to provide Plaintiff with his copies and his comments to Plaintiff demonstrate a lack of concern for Plaintiff's rights or feelings, there is no indication that his conduct was motivated by an underlying desire to retaliate against Plaintiff for any protected conduct. As noted above, such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim

under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Nor did Plaintiff ultimately suffer any prejudice, since he later received the copies from Librarian Kemp. Accordingly, Plaintiff fails to state a retaliation claim against Defendant Gibson.

### D.    Conspiracy

Plaintiff makes a conclusory assertion that Defendants engaged in a conspiracy to violate his rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving various individual prison staff. Plaintiff appears to rely entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer

"possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum. This is a dismissal as described by 28 U.S.C. § 1915(g). A judgment consistent with this opinion will be entered.


Dated:   February 28, 2025                              /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge

21